```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                   SOUTH BEND DIVISION
```

LAKESHA NORINGTON,           )
                             )
Petitioner,                  )
                             )
vs.                          )   CAUSE NO. 3:12-CV-521
                             )
SUPERINTENDENT,              )
                             )
Respondent.                  )

## OPINION AND ORDER

This matter is before the Court on a Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody filed by Lakesha Norington,[1] a *pro se* prisoner, on September 14, 2012, challenging a disciplinary proceeding. (DE #1).  For the reasons set forth below, the petition (DE #1) is **DENIED**.

BACKGROUND

In WCU # 12-02-0181, Norington was found guilty of attempting to engage in, or encouraging others to engage in, a group demonstration, work stoppage, or refusal to work in violation of Indiana Department of Correction ("IDOC") disciplinary rules 223/240.  The charge was initiated on February 6, 2012, when

---

[1] The petitioner, whose legal name is Shawntrell Marcel Norington, was born a male but identifies himself as a female and refers to himself with female pronouns.  The Court does so here out of courtesy.

Corrections Officer Critchfield (first name unknown) wrote a conduct report stating as follows:

> On the above date and time [February 6, 2012, at approximately 12:10 p.m.] I Ofc. Critchfield along with Ofc. Gulleson was picking up trays on B5 range when Offender Norington, Shawntrell #138726 yelled and stated that "Everyone is to not give up their tray until Mr. Lowry come on the pod and speaks with him."

(DE #10-1.)  On that same date, Corrections Officer D. Gulleson prepared a witness statement stating as follows:

> On the above date and time [February 6, 2012, at approximately 12:10 p.m.] I Ofc. Gulleson with Officer Critchfield was picking up trays on B5-Range when Offender Norington, Shawntrell #138726 yelled and stated that "Everyone is to not give up their tray until Mr. Lowry comes on the pod and speaks to me."

(DE #10-2.)

On February 8, 2012, Norington was notified of the charge and given a copy of the conduct report.  (DE #10-3.)  She pled not guilty, declined the assistance of a lay advocate, requested no physical evidence, and requested witness statements from Dr. Williams (first name unknown), staff member E. Lowry, and fellow inmate Engai Maul.  (*Id.*)  Witness statements were obtained from all three individuals, but Dr. Williams and Lowry both stated that they were not present during the incident.  (DE #10-4, 10-6.)  In his statement, Maul claimed that Norington did not tell the other inmates to hold their trays, and instead had said something like, "Don't hold ya'll trays, he wouldn't like that." (DE #10-5.)

On February 16, 2012, a hearing was held on the charge.  (DE

#10-8.) Norington stated that the charge was false and that "[w]hat was perceived to be said is not what was said." (*Id.*) The hearing officer found Norington guilty and revoked 30 days of earned time credits. (*Id.*) Norington appealed, but her appeals were denied. (DE #10-9 to #10-12.) Thereafter, she filed this petition.

DISCUSSION

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the hearing officer's determination. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Norington first claims she was denied the right to an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is

high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Here, Norington argues that the hearing officer was biased because he was in the room when she was screened on the charge. Even if this is true, it would not establish the type of bias that violates federal due process. *Piggie*, 342 F.3d at 666. Norington believes that the hearing officer violated prison policies by being present during screening, but a violation of prison policy does not provide grounds for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief cannot be granted for violations of state law); *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997) (claim premised on violation of prison policy was not cognizable in federal habeas proceeding).

Norington next claims that her rights were violated because the charge was false. "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). However, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due

process." *Id.* In other words, the protections to which Norington was entitled are the protections afforded by *Wolff*, and her claim that the charge was false does not itself entitle her to federal habeas relief.

Liberally construed, her claim may be that the evidence was insufficient to support the guilty finding. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson*, 188 F.3d at 786. "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The Court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

Here, Norington was found guilty of attempting to engage in, or encouraging others to engage in, a group demonstration. (*See* DE #10-14.) The evidence shows that two correctional officers were collecting lunch trays in Norington's unit, when they heard Norington yell to the other inmates not to return their trays until another staff member came up to speak with her. (DE #10-1, 10-2.)

5

This evidence provides some evidence that she was guilty of the charge. *See Hill*, 472 U.S. at 457; *see also Moffat v. Broyles*, 288 F.3d 978, 988 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Although Norington denied making the statement, and obtained a corroborating statement from another inmate, the hearing officer was not required to credit Norington's exculpatory evidence, nor was he required to establish guilt beyond a reasonable doubt. *Moffat*, 288 F.3d at 981. The question for this Court is solely whether there is some evidence in the record to support the hearing officer's determination, and that standard is satisfied.

Norington's remaining claims pertain to the number of decision-makers in her case and the sanctions that were imposed, and are premised on violations of internal prison policies. As stated above, a violation of prison policy does not provide grounds for granting federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Hester*, 966 F. Supp. at 774-75. Norington has not established a violation of her federal due process rights and, accordingly, her petition will be denied.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DENIED**.

**DATED: April 9, 2013**            **/s/ RUDY LOZANO, Judge**
                                    **United States District Court**